MAX ABRAMS, ADMINISTRATOR, *vs.* DIRECTOR GENERAL
OF RAILROADS.

Second Judicial District, Norwich, October Term, 1920.

WHEELER, C. J., BEACH, CASE, CURTIS and GREENE, Js.

The evidence in the present case reviewed and *held* to demonstrate that the plaintiff's intestate was not in the exercise of reasonable care when he attempted to drive his motor-truck across a private railroad crossing in the face of a swiftly oncoming train which was plainly visible for a distance of about fifteen hundred feet, and therefore that the trial court committed no error in setting aside a verdict for the plaintiff.

Argued October 19th—decided December 22d, 1920.

ACTION to recover damages for negligently causing the death of the plaintiff's intestate, brought to the Superior Court in New London County and tried to the jury before *Kellogg, J.;* verdict for the plaintiff for $7,500, which the trial court, upon motion of the defendant, set aside as against the evidence, and from this decision the plaintiff appealed. *No error.*

On March 26th, 1918, the plaintiff's decedent, Ostrow, was driving an empty motor-truck in a southerly direction upon a private crossing of the double tracks of the New York, New Haven & Hartford Railroad Company near Mystic, when the front end of the truck was struck by a west-bound passenger express train running at the rate of about fifty miles an hour. Ostrow was killed and his two companions, Zabarsky and Selikowitch, injured. They had used the crossing several times during the day, and at the time of the accident, about 7:30 p. m., were going to a factory south of the railroad. It was dark and the air was clear. Looking eastward from any point on the roadway less than one hundred feet north of the crossing, the tracks are within

the line of vision for a distance of about fifteen hundred feet. Beyond that distance they pass out of sight around a curve. The train in question was brilliantly lighted and the engine carried a headlight visible at all time after the train rounded the curve. At a point about forty feet north of the rails, Ostrow stopped the truck, but not the motor, and Zabarsky went ahead, looked east and west, and called to Ostrow to go ahead. Zabarsky walked back to meet the truck, and stepped on the running-board when the truck was still at some distance from the crossing. Both Zabarsky and Selikowitch testified that after the truck started toward the crossing it proceeded at slow speed, and that they neither saw nor heard the approaching train until the front wheels of the truck reached the outer rail of the west-bound track, when the train was so nearly upon them that they were hit and stunned before they had time to jump. The trial judge, upon motion, set aside the verdict for the plaintiff.

*Joseph P. Tuttle,* with whom, on the brief, was *Perry J. Hollandersky,* for the appellant (plaintiff).

*James W. Carpenter,* for the appellee (defendant).

BEACH, J. The trial court set aside the verdict on the ground that the jury could not reasonably have found that the decedent was in the exercise of due care at the time of the accident, and that the evidence necessarily showed that either the intestate did not look attentively, or if he did look, he mistook his chances of getting across in safety. On this point the testimony of the two survivors, with its implications, is conclusive. The point at which Ostrow stopped the truck and waited for a signal to start again, is located quite accurately with reference to a stone wall thirty-six feet north of

the nearest rail, and is approximately forty feet therefrom. The speed of the truck when in low gear is also fixed by the undisputed evidence at not less than three miles an hour. There is nothing in the evidence to suggest that the truck stopped from the time when it started toward the crossing until it was struck by the train as the front wheels reached the track. At the slowest rate of speed suggested on the evidence, the truck would cover forty feet inside of ten seconds, and since the train reached the crossing at the same time as the truck, it must have been well within the range of vision when the truck started from its stopping place forty feet away. Assuming a speed of even sixty miles an hour, the train could not have been more than about nine hundred feet away when the truck started; and on the testimony no claim is or can be made that the train was not plainly visible at that distance.

Zabarsky testified that no train was in sight when he signalled Ostrow to go ahead. If that testimony be accepted as establishing the fact, then it follows that Ostrow must have waited until the train did come in sight before he acted on the signal.

In any aspect, the evidence required the jury to find that the decedent started toward the crossing at a time when the train was in sight, and continued on his course until it was upon him, although the truck could have been stopped at any time within two or three feet.

There is no error.

In this opinion the other judges concurred.